UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **HITESH SHEEVAM** and ) <br> **BGMR HAZWB, LLC,** and ) <br> **BGMR SSHD, LLC,** ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> **RAMAN PATEL,** ) <br> ) <br> Defendant. ) | Cause No. <br><br><br><br><br><br><br> **Jury Trial Demanded** |

## COMPLAINT

COME NOW Plaintiff Hitesh Sheevam, BGMR SSHD, LLC and BGMR HAZW, LLC, and for their claims against Raman Patel, state as follows:

1. Hitesh Sheevam ("Hitesh") is an individual residing in the County of St. Louis, Missouri.

2. BGMR SSHD, LLC ("SSHD") is a Missouri limited liability company with its principal place of business at 3660 South Lindbergh Blvd., Sunset Hills, Missouri. SSHD operates a Days Inn Hotel at the location.

3. BGMR HAZWB, LLC ("HAZW") is a Missouri limited liability company with its principal place of business at 7133 Douglas Palmer Place, Hazelwood, Missouri. HAZW operates a Comfort Inn Hotel at the location.

4. Defendant Raman Patel ("Raman") is an individual residing in Fairview Heights, Illinois.

*1*

5. Yogesh Patel ("Yogesh") is an individual residing in the City of St. Louis, Missouri. Hitesh and Yogesh are brothers, and Raman is their father.

## VENUE/JURISDICTION

6. Diversity of citizenship exists as Plaintiffs are all citizens of the States of Missouri, and Defendant is a citizen of the State of Illinois. The amount in controversy is in excess of Seventy-Five Thousand Dollars ($75,000.00), and therefore, jurisdiction is proper pursuant to 28 U.S.C. §1332.

7. Plaintiffs are located within the Eastern Division of this Court and a substantial part of the events or omissions giving rise to the claims occurred within this jurisdiction; therefore, venue is proper pursuant to 28 U.S.C. §1391.

## FACTUAL ALLEGATIONS

8. At various times in the past, Hitesh, Yogesh and Raman have jointly owned and operated various hotel and real estate businesses in Missouri and Illinois. The ownership interests of each individual, and the management and control of the various businesses, have been the subject of an ongoing dispute between the family and its members.

9. Before July 2006, Hitesh owned the following percentages of the following businesses:

BGMR SSHD, LLC            85%

BGMR HAZW, LLC           60%

Hitesh claimed that his father Raman, was the owner of the remaining ownership interests of each business.

10. Furthermore, before July 2006, Hitesh owned various interests in other businesses owned by Hitesh and Raman.

11. In addition, Hitesh owned 40% of BGMR Real Estate LLC (f/k/a Poo Management, LLC), which was the management company operating the various hotels owned by the family.  Raman owned 20% and Yogi owned 20% of BGMR Real Estate LLC.

12. In an effort to settle various disputes, including both actual and potential litigation between members of the family Hitesh agreed to give up a portion of his ownership in various family-owned businesses.  In particular, Hitesh, Raman, Yogesh and Shilpa Sheevam (who was Hitesh's wife at the time) (collectively the "Members") entered into various membership Assignment and Assumption Agreements which established the ownership interests of the Members in the following family-owned businesses (the "Companies"):

BGMR SSHD, LLC and BGMR HAZWB, LLC

| | |
|---|---|
| Raman Patel | 40% |
| Hitesh Sheevam | 20% |
| Shilpa Sheevem | 20% |
| Yogesh Patel | 20% |

13. For each business, the Members also entered into Operating Agreements.

14. The Operating Agreements contained two particular provisions: (1) a "buy-sell" provision that permitted any member to "put" his or her membership interest, thereby requiring the company to purchase that membership interest; and (2) a restriction on any member's ability to incur debt of more than $250,000 for the company without a 2/3's majority vote of all members.

15. Shortly thereafter, in or about July 2006, Yogesh and Raman removed Hitesh from any management or operational involvement in the Companies.

16. On September 7, 2006, Hitesh notified the other Members in writing that he desired to "put" his membership interest in each Company for purchase by the Companies in accordance with the Operating Agreements.

17. Despite making this request in writing as required by the Operating Agreements, Raman, who was controlling the companies at the time, refused to comply with the Operating Agreements and to purchase the membership interests of Hitesh.

18. Thereafter, Raman executed an agreement to transfer complete ownership in the Comfort Inn Collinsville, Illinois, for a portion of what was owed to Hitesh in satisfaction of the "put" request; however, Raman refused to go forward with the transfer of ownership after delaying long enough to complete the improper loan transactions and the other acts of misrepresentation described below.

19. On or about December 14, 2006, Raman acting in an effort to deceive, caused SSHD to become indebted to Royal Bank in the amount of approximately $2.7 million. Raman executed the paperwork on behalf of the company, indicating that there had been a resolution by SSHD authorizing the loan and the resulting mortgage on the property. In fact, there had never been a resolution or vote of the Members regarding the loan and mortgage, and there had never been any approval by 2/3's of the Membership interest authorizing the loan and mortgage. Because Hitesh and his wife Shilpa owned 40% of the company, their approval was required, but never received. Moreover, neither Hitesh nor Shilpa had any knowledge about the Royal Bank loan and mortgage. Consequently, the Royal Bank loan and mortgage were improper and illegal.

19. In or about April 2007, Raman, acting in an effort to deceive, caused HAZW to become indebted to Rockwood Bank in the amount of approximately $1.8 million. Raman executed the paperwork on behalf of the company, indicating that there had been a resolution by HAZW authorizing the loan and the resulting mortgage on the property. In fact, there had never been a resolution or vote of the Members regarding the loan and mortgage, and there had never been any approval by 2/3's of the Membership interest authorizing the loan and mortgage. Because Hitesh and his wife Shilpa owned 40% of the company, their approval was required, but never received. Consequently, the Rockwood Bank loan and mortgage were improper and illegal.

20. In large part because Raman refused to honor the written "put" of Hitesh's ownership interest in the Companies, the Members continued to have disputes, including the threat of potential litigation. Consequently, in or about April 2007, the Members agreed to permit a "council" of three persons decide upon an equitable distribution of the assets and liabilities of the various business interests of the Members, including the Companies. Each Member executed an agreement to have the council decide these matters; however, at the time that Hitesh signed the agreement, he was not aware that Raman, acting in conjunction with Yogesh, had already incurred the illegal and improper debt on behalf of SSHD and HAZB. Had Hitesh known about the illegal and improper loans, he would not have entered into the agreement.

21. On or about May 25, 2007, the council prepared its report suggesting how the assets and liabilities of the companies should be distributed between the Members. Hitesh was to receive 100% ownership interest of SSHD and a 50% ownership interest in HAZW (his then

wife Shilpa receiving the other 50% interest).  The Report did not indicate that the illegal and improper loans and mortgage had been made by Raman, and did not acknowledge that the debt for each company had been increased significantly by these actions.

22.     The Report also required that each Member "refinance" the loans on the companies' properties or risk losing the properties back to the remaining Members.  So, Hitesh was required to refinance the loans on the properties of SSHD and HAZW.

23.     It was not until after the Report, when Hitesh became re-involved in the management of the Companies, that he realized that the debt on the properties was significantly higher because of the unauthorized loan transactions than when he had been removed from management of the Companies in July 2006.  The difference was approximately $1.4 million.  Upon information and belief, Raman used all or most of the proceeds from the illegal loans to reduce the debt on properties he owned with Yogesh, which were also financed by Rockwood and/or Royal Bank.

24.     In February 2008, Hitesh was forced to refinance the full amount of the loan on the SSHD (approximately $2.7 million), including a prepayment penalty of $25,000.

25.     In September 2008, Hitesh attempted to refinance the Rockwood Bank loan on HAZW; however, despite having made the previous loan on the property, which loan was illegal and improper, Rockwood stated that it could not lend money to Hitesh because the HAZW property was insufficient collateral.  Upon information and belief, Raman, at the time of entering into the illegal and improper loan, had cross-collateralized the HAZW property with other properties that he also owned with Yogesh.

26. At the time that the Members executed the various Membership Assignment and Assumption Agreements, it was agreed between the Members that would receive annual compensation of approximately $100,000 annually from the Companies.

27. Despite the promise, when Yogesh and Raman took over management and control of the companies, they refused to pay any compensation to Hitesh.

28. At the time that the council was proposed as a means to resolve the various disputes between the Members, Hitesh and his children were being subjected to economic duress because of the failure of Yogesh and Raman to: (i) honor the "put" of his membership interests in the companies; and (ii) provide the promised annual compensation. Hitesh would not have executed the agreement but for this economic duress.

### COUNT I – FRAUD (ASSIGNMENT AGREEMENTS)

29. Hitesh incorporates by reference each of the allegations set forth in paragraphs 1-28 above.

30. At the time that Hitesh executed the various Assignment and Assumption Agreements and the Operating Agreements, Raman made the following material and false statements: (i) that he would honor the terms and conditions, including the "buy-sell" provisions; and (ii) that he would direct the companies to pay annual compensation to Hitesh in the amount of $100,000.

31. Those statements were false at the time they were made, and Raman knew they were false.

32. Hitesh had no reason to know that the statements were false, and Hitesh reasonably relied upon the statements to his detriment when he executed the various Membership Assignment and Assumption Agreements.

33. As a result of the defendant's false statements, Hitesh has been damaged.

34. Defendant's actions were wrongful, intentional, and made with malicious intent, or with a reckless disregard for the rights of Hitesh, thereby entitling Hitesh to an award of punitive damages in an amount sufficient to punish Raman for his misconduct.

WHEREFORE, Hitesh Sheevam respectfully requests that this Court enter its judgment and order in his favor and against Raman Patel, in an amount that will fairly and reasonably compensate Sheevam for his damages; for an award of punitive damages; for and award of costs and attorney's fees, and for such other and further relief as this Court deems just and proper.

## **COUNT II – FRAUD (COUNCIL AGREEMENT)**

35. Hitesh incorporates by reference each of the allegations set forth in paragraphs 1-34 above.

36. At the time that Hitesh executed the Council Agreement, Raman had failed to disclose to Hitesh that he had improperly and illegally entered into the Rockwood Bank Loan and the Royal Bank Loan.

37. Ramon knew or should have known that these were material omissions of fact.

38. Hitesh had no reason to know of the material omissions, and because of the material omissions, Hitesh acted to his detriment when he executed the Council Agreement.

39. As a result of the Defendants' material omissions, Hitesh has been damaged.

40.  But for the defendant's material omissions, Hitesh would not have entered into the Council Agreement.

41.  Defendant's actions were wrongful, intentional, and made with malicious intent, or with a reckless disregard for the rights of Hitesh, thereby entitling Hitesh to an award of punitive damages in an amount sufficient to punish Raman for his misconduct.

WHEREFORE, Hitesh Sheevam respectfully requests that this Court enter its judgment and order in his favor and against Raman Patel, declaring the Council Agreement to be void and unenforceable, awarding Hitesh damages in an amount that will fairly and reasonably compensate him for his damages; for an award of punitive damages; for and award of costs and attorney's fees, and for such other and further relief as this Court deems just and proper.

## COUNT III – STEALING BY DECEIT

42.  Come Now SSHD and HAZW, and incorporate by reference the allegations set forth in paragraphs 1-41 above.

43.  Raman prepared and executed false documents in order to procure monies from Rockwood Bank and Royal Bank using SSHD and HAZW real and personal property as security and collateral.  These monies were used by Raman to reduce the debts on other properties he owned or controlled with Yogesh.

44.  Raman did not have authority to borrow money on behalf of SSHD and HAZW.

45.  Raman did not have authority to borrow money from SSHD or HAZW.

46.  As a result of the actions of Raman, SSHD and HAZW were saddled with increased debt in the amounts of $1.4 million.

47.  SSHD was required to refinance the Royal Bank Loan and to pay a prepayment penalty of $25,000.

48.  HAZW has been notified that Rockwood Bank intends to foreclose on the Rockwood Bank Loan, and HAZW cannot find a lender with whom to refinance the Rockwood Bank Loan.

49.  Despite repeated demands, Raman has refused to return the money to SSHD and/or HAZW.

50.  Because of the wrongful actions of Raman, SSHD and HAZW have been damaged.

51.  Defendant's actions were wrongful, intentional, and made with malicious intent, or with a reckless disregard for the rights of SSHD and HAZW, thereby entitling them to an award of punitive damages in an amount sufficient to punish Raman for his misconduct.

WHEREFORE, Plaintiffs BGMR SSHD, LLC and BGMR HAZWB, LLC respectfully requests that this Court enter its judgment and order in their favor and against Raman Patel, in an amount that will fairly and reasonably compensate them for the damages incurred, in an amount greater than $75,000; for an award of punitive damages; for and award of costs and attorney's fees, and for such other and further relief as this Court deems just and proper.

### **COUNT IV – CONVERSION**

52.  Come Now SSHD and HAZW, and incorporate by reference the allegations set forth in paragraphs 1-51 above.

53.  Raman prepared and executed false documents in order to procure monies from Rockwood Bank and Royal Bank using SSHD and HAZW real and personal property as security

and collateral. These monies were used by Raman to reduce the debts on other properties he owned or controlled with Yogesh.

54. In doing so, Raman has converted the property of SSHD and BGMR for his own use.

55. Despite repeated demands, Raman has refused to return the money to SSHD and/or HAZW.

56. Because of the wrongful actions of Raman, SSHD and HAZW have been damaged.

57. Defendant's actions were wrongful, intentional, and made with malicious intent, or with a reckless disregard for the rights of SSHD and HAZW, thereby entitling them to an award of punitive damages in an amount sufficient to punish Raman for his misconduct.

WHEREFORE, Plaintiffs BGMR SSHD, LLC and BGMR HAZWB, LLC respectfully requests that this Court enter its judgment and order in their favor and against Raman Patel, in an amount that will fairly and reasonably compensate them for the damages incurred, in an amount greater than $75,000; for an award of punitive damages; for and award of costs and attorney's fees, and for such other and further relief as this Court deems just and proper.

**WITZEL & KANZLER, LLC**

By: /s/ Jay L. Kanzler Jr.
Jay L. Kanzler Jr., #3516
Brian J. Massimino, #498805
2001 S. Big Bend Boulevard
St. Louis, MO 63117
(314) 645-5367(tel)
(314) 645-5387 (fax)
jaykanzler@wkllc.com

**Jury Trial Demanded**